ADELAIDE SHAY, complainant,

" *v.*

INA L. SHAY et al., defendants.

[Decided August 5th, 1924.]

**Sale of Land—Title in One of Two or More Purchasing Parties— Resulting Trusts—Question of Judgments Against Title Holder Obtained by Another Defendant for Alienation of Husband's Affections.**

On bill, &c.

*Messrs. McDermott, Enright & Carpenter,* for the complainant.

*Mr. Warren Dixon,* for the defendant May E. Schlie.

*Mr. John W. Orford,* for the defendant Ida Geise.

FIELDER, V. C.

There is no controversy between the complainant and her daughter, Ina L. Shay, defendant. The daughter disclaims any interest in the two-family dwelling-house and lot to which she holds the record title, and no reason appears why she could not and would not convey the title to her mother, and thus avoid the expense and delay of this suit, except that the defendant May E. Schlie has recovered a judgment against Miss Shay for $10,000 for alienating the affections of Bernard Schlie, husband of May E. Schlie. The controversy is really between the complainant and the defendant May E. Schlie, the complainant seeking, in this suit, a decree that Mrs. Schlie's judgment is not a lien on the premises in question and that Miss Shay convey the same to the complainant, freed and discharged of the judgment.

The case made as between the complainant and her daughter is one easily concocted and difficult to disprove. Under the circumstances here present it must be examined with sus-

picion and the complainant must be required to establish her claim by clear and convincing proof.

The bill of complaint alleges and the complainant testified that after she had decided to purchase the property she consulted an attorney, who advised her not to take the title in her own name, but in the name of her daughter, because she (complainant) was not living with her husband, and that upon such advice the attorney prepared a contract which named her daughter as the vendee. This attorney, called as a witness for the complainant, testified that the complainant asked for and was given no advice by him, but that the complainant and Schlie gave him the particulars for the contract, and that under their instructions he prepared a contract of sale, which named Mrs. Geise as the vendor and Miss Shay as the vendee. The attorney also testified that under instructions from the same source, he prepared the bonds and mortgages hereinafter mentioned and attended to their execution.

The facts of the transaction seem to be that the property was first brought to Mrs. Shay's attention by Schlie, who had contracted, in the name of his sister, Mrs. Geise, to buy it, with three other parcels. Although then married and living with his wife, Schlie was a frequent visitor at the Shay home, and his relations with Miss Shay were the basis of the suit subsequently brought by Mrs. Schlie, in which she recovered the $10,000 judgment above mentioned against Miss Shay. He took Mrs. Shay to the attorney's office and he and Mrs. Shay told the attorney the form of contract of sale which they required and after it was drawn it was signed by Schlie, as agent for Mrs. Geise and by the complainant, as agent for her daughter. The terms of sale, as arranged by Schlie and the complainant, were that the purchase price should be $6,000, of which $1,500 was to be paid in cash, $4,000 to be raised by a first mortgage on the property, and Schlie to take a second mortgage for $500. At this time Mrs. Shay had two savings bank accounts, both standing in the name of "Addie M. Shay for Ina L. Shay," from which she drew $1,500, which she paid on account of the agreed purchase

price. She testified that she kept the bank accounts under this title because, in case of her death, she wanted her daughter to have all the money so on deposit, and that she had been advised that while she was alive her daughter could not draw against the accounts. Miss Shay testified that she was not aware that her mother had these bank accounts and that she had no interest in them. The complainant further testified that all the money deposited in these accounts came to her from relatives, either by way of gift or as legacies. and while her testimony in this point is indefinite it is uncontradicted and I accept it as proved, that the complainant put up $1,500 of her own money which was used for the purchase of the property. To complete the purchase under the Geise contract, Miss Shay executed two bonds, secured by her two mortgages on the premises. one to a Mrs. Muller for $4,000 and the other for $500 to Schlie, and the $4,500 thus loaned by the mortgagees was paid. with Mrs. Shay's $1,500, to the grantor, who thereupon delivered her deed drawn to Miss Shay as grantee. At the same time, pursuant to arrangement made by Schlie and Mrs. Shay, Miss Shay also executed and delivered to her mother her bond for $1,500, secured by her third mortgage on the premises in question. If Mrs. Shay was the real purchaser of the property, as she and her daughter now claim, it is difficult to understand why Schlie and Mrs. Shay should have required the daughter to execute a bond and mortgage to secure the payment of $1,500 advanced by Mrs. Shay. They did all they could to make it appear that Miss Shay was really the purchaser, and had borrowed the whole purchase price on her personal obligations and had secured the lenders by mortgages on her property. The complainant's only explanation of the $1,500 mortgage is that it represented the money she had put up, and the daughter testified that her mother told her that this mortgage was given to protect her (the mother's) interest.

My view of the transaction is that Schlie considered the purchase of this property a good business venture, and was willing to give Miss Shay the benefit of it. He could borrow $4,000 for her on her bond and mortgage and was able to

loan her $500 himself on the same kind of security, but he was $1,500 short of the amount required for the purchase, and this sum he induced the complainant to advance from her savings bank funds, upon pointing out to her that she could be secured by her daughter's bond and a third mortgage, and the result of Schlie's plans is that Miss Shay is personally liable on her three bonds for $4,000, $500 and $1,500, respectively, by means of which $6,000 was raised to enable her to take title to the property in her name.

Where two persons advance the purchase price of real estate and the title is taken in the name of one, a resulting trust will arise to the extent of the part of the purchase price advanced by the other, if it is established that the money advanced by that other was for a specific part or interest in the real etsate, otherwise that other can have no more than a lien upon the real estate for the portion of the purchase price advanced by him. My conclusion is that the title was not taken by Miss Shay for the benefit of the complainant alone, nor for the joint benefit of the complainant and herself in proportion to the amount of the purchase price advanced by each, but that the title was taken by Miss Shay for her sole benefit, and that the $1,500 mortgage given by her to the complainant was intended and should be decreed to be security to the complainant for the $1,500, with interest thereon.

The bill of complaint will be dismissed as to the defendant May E. Schlie, and the complainant may have a decree, if she desires it, that the defendant Ina L. Shay holds the title in question in trust for the complainant, subject to the liens and encumbrances of record.

The complainant also prayed a decree that the deed from the defendant Ida Geise to the defendant Ina L. Shay be reformed so as to describe the grantee therein as trustee for complainant. This prayer could be granted only in case it is made to appear that it was the intention to so describe the grantee in the conveyance, and that by mistake the intention was not carried out. The proof is to the contrary, and the bill will be dismissed as to the defendant Ida Geise.